In the Matter of the Compensation of
Wallace Reed, Claimant.

REED,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(78-10329; CA A24665)

662 P2d 776

N. Thomas Wilson, IV, Salem, argued the cause for petitioner. With him on the brief were Albert C. Depenbrock, and Anson, Creighton, Depenbrock and Wilson, Salem.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

JOSEPH, C. J.

Richardson, J., dissenting.

## JOSEPH, C. J.

The issue in this workers' compensation case is the amount of claimant's permanent total disability benefits. The parties stipulated to the facts underlying the award.

Claimant worked full time as a draftsman. He worked 40 hours per week on that job and approximately 8 hours per week overtime. He also worked as a service station attendant about 15 hours per week. He was injured while working at the service station, and it is agreed that he is entitled to permanent total disability benefits. The referee and the Workers' Compensation Board held that his benefits, calculated pursuant to ORS 656.206, are to be based only on his wages from the part-time employment. Claimant appeals, contending that his benefits should be based on his total wages from both jobs.

Permanent total disability benefits are based on a percentage of wages. ORS 656.206(2). That statute provides that: " 'Wages' means wages as determined under ORS 656.210." The latter statute, relating to temporary total disability benefits, provides:

"(2) For the purposes of this section, the weekly wage of workers shall be ascertained by multiplying the daily wage the worker was receiving at the time of the injury."

The statute then includes a formula for determining the weekly wage by multiplying the daily wage by the days the worker is "regularly employed" during a week. The section concludes:

"As used in this subsection, 'regularly employed' means actual employment or availability for such employment."

The Board noted that the term "wage" is not separately defined in either ORS 656.206 or 656.210, and it applied the general definition of that term found in former ORS 656.005(30):[1]

" 'Wages' means the money rate at which *the service rendered* is recompensed *under the contract of hiring in force at the time of the accident,* including reasonable value of board, rent, housing, lodging or similar advantage received from the employer. * * *" (Emphasis supplied.)

---

[1] Subsequent to claimant's injury the same definition of wages was renumbered and is presently found in ORS 656.005(27). Or Laws 1981, ch 723, § 3; Or Laws 1981, ch 854, § 2.

The Board concluded that that definition "could hardly be more clear in its terms" and held that "when calculating a claimant's permanent total disability benefits, he will receive benefits based on his wages on the job he was working when injured."

We concur in the Board's analysis. ORS 656.005(30) expressly addresses the point in time when wages are to be determined and what is included in that calculation. It does not expressly address whether different wage contracts with different employers should be combined to determine the total wages for benefit calculation. Prior to 1965, permanent total disability benefits were determined on a flat rate based on the number of dependents of an injured worker and were not related to wages earned. The definition of wages in former ORS 656.005(30) has been in effect at least since 1959. *See* Or Laws 1959, ch 448, § 1. The survival of that definition after the wage base formulation was adopted, Or Laws 1965, ch 285, § 22A, is not necessarily a legislative determination that wages from concurrent employment are not the appropriate wage base for benefits, but the referee noted and claimant concedes that the past practice of the agency has been to award disability benefits based only on wages from the injury-producing employment if more than one employment contract is involved.[2] The practice reflects a fundamental policy of the compensation system that employers should bear directly or through insurance the cost of injuries to their employes incurred in their service.

Although that policy can indeed involve difficult problems of allocation of responsibility under some circumstances, *see Bracke v. Baza'r*, 293 Or 239, 646 P2d 1330 (1982), this is not such an instance. This employer was required only to protect this employe against the risk of industrial injury

---

[2] After the claim was filed in this case, the department adopted OAR 436-54-212(2)(f), respecting dual employment:

"(2) The rate of compensation for workers employed with unscheduled, irregular or no earnings shall be computed on the wages determined in the following manner:

"* * * * *

"(f) Employed two jobs, two employers: Use only wage of job on which injury occurred if worker unable to work either job. * * *"

The Board correctly concluded that the regulation did not apply retroactively and instead based its decision on a construction of the statute.

incurred in its employ, and that is all the insurance it was required to buy or that SAIF was required to sell.

Affirmed.

**RICHARDSON, J.,** dissenting.

One of the expressed purposes of the Workers' Compensation Act is

"[t]o provide, regardless of fault, sure, prompt and complete medical treatment for injured workers and fair, adequate and reasonable income benefits to injured workers and their dependents * * *." ORS 656.012(2)(a).

The humanitarian purposes of the Act are geared to providing compensation to the injured worker according to the extent of his disability. If he is permanently and totally disabled, by definition (ORS 656.206(1)(a)) he has lost his total wage earning capacity, and the purpose of the Act is to replace the lost employability with monthly benefits to enable him and his dependents to survive. In short, the focus of the Act is on compensation for the worker's industrial injury. The majority focuses the humanitarian aspects of the Act to the benefit of the employer. The majority says:

"* * *This employer was required only to protect this employe against the risk of industrial injury incurred in its employ, and that is all the insurance it was required to buy or that SAIF was required to sell." 63 Or App at 4.

The risk of any employment is that a worker will be injured and may be entitled to permanent total disability benefits. The carriers do not insure the worker; they insure the employers. In this instance, the injury has permanently incapacitated the claimant from working in any employment, not just a 15-hour per week part-time job. Were it not for the Act (ORS 656.018) the claimant could proceed in a common law action against the employer and could seek damages related to his loss of earning power. One expressed policy of the Act is to replace the rigors of common law based litigation with a system to fairly and expeditiously to compensate the injured worker for his loss. ORS 656.012. The statute should be construed in light of the expressed policies and purposes of the Act in favor of the injured worker, and doubts in statutory construction should be resolved in favor of full compensation.

The Workers' Compensation Board and the majority depend on the definition of wages found in former ORS 656.005(30):

> " 'Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including reasonable value of board, rent, housing, lodging or similar advantage received from the employer. * * *"

This definition provides what is to be included in wages and the time when that calculation is to be made. It was adopted prior to the time when total disability benefits were based on wages earned and does not directly address whether the wages earned from concurrent employment is to be included in the benefit base calculation.

ORS 656.003 provides:

> "Except where the context otherwise requires, the definitions given in this chapter govern its construction."

In the context of the policies of the Act and the wording of ORS 656.206 and 656.210, I conclude that wages from concurrent employment should be included in the benefit base determination. ORS 656.210(2) provides the formula for calculating permanent disability benefits.

> "For the purposes of this section, the weekly wage of workers shall be ascertained by multiplying the daily wage the worker was receiving at the time of his injury. * * *"

There follows a series of formulae which in essence provide that the above described daily wage is to be multiplied by the number of days "the worker was regularly employed during a week." The subsection concludes: "As used in this subsection 'regularly employed' means actual employment or availability for such employment." Consequently the days worked for the daily wage do not necessarily mean the actual time regularly on the job. Nowhere in these sections is the wage base restricted to the single employment which produced the injury. The objective is to replace partially the income lost by the results of the industrial injury. Because the statutes, when read together, do not base the benefits on a single employment, the doubt should be resolved in favor of the worker. Such a construction is consistent with the expressed and preceived purposes of the Act.

I would reverse and remand to the Board for recalculation of benefits based on claimant's wages from both employments. Therefore, I dissent.