Argued and submitted January 17, affirmed April 10, 2002

# Mia MACHADO-MILLER,
*Appellant,*

*v.*

# MERSEREAU & SHANNON, LLP,
*Respondent.*

0004-03308; A113283

43 P3d 1207

Kenneth C. Mennemeier, Sacramento, California, argued the cause for appellant. With him on the briefs was Mennemeier, Glassman & Stroud LLP.

Susan K. Eggum argued the cause for respondent. With her on the brief was Susan K. Eggum, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiff alleged that Mersereau, her attorney in an earlier case and a member of the law firm named as defendant in this one, committed malpractice in the earlier case, tried in United States District Court of Oregon, by failing to argue for the application of California law. The trial court in this case granted defendant's motion for summary judgment and denied plaintiff's. Plaintiff appeals. We hold that, even if defendant had argued for the application of California law in the underlying federal case, the trial court there would properly have rejected the argument and that therefore defendant's failure to make the argument did not cause plaintiff's damages. Accordingly, we affirm.

The following facts are largely undisputed. On March 29, 1994, plaintiff was hired as a salesperson by The Empire Company ("Empire"), an Oregon-based corporation in the business of manufacturing and distributing uniforms and promotional products in the western United States and Canada. Empire's main office was in Portland, where it processed orders, administered payroll, maintained inventories, shipped and received orders, and sent out paychecks. Its other offices were in Seattle and Sacramento. Although plaintiff worked out of the Sacramento office, she received all her instructions, as well as her paychecks and commissions, directly from Portland.

Plaintiff's employment contract contained a noncompetition clause that required her to "refrain from competing with Empire in the restricted area * * * for a period of thirty-six months following the effective date" of the end of her employment with Empire. The agreement also contained a choice-of-law clause that provided: "This agreement shall be governed by the laws of the State of Oregon."

In January 1997, plaintiff resigned from Empire and, despite the noncompetition clause, went to work for one of its competitors, Idea Man, Inc., a California-based company. She took two Empire clients with her, causing significant harm to that company. In an attempt to enforce the noncompetition clause and regain its clients, Empire, in March 1997, brought an action in Multnomah County Circuit Court

for a temporary restraining order against plaintiff. Defendant removed the action to federal court, where a United States District Court judge granted the motion for a temporary restraining order on April 2. Subsequently, a United States magistrate judge heard Empire's motion for a preliminary injunction barring plaintiff from working for any of Empire's competitors. Applying Oregon law as the contract specified, the magistrate judge recommended that the preliminary injunction be issued. A federal district court judge adopted that recommendation. Plaintiff appealed, but before the appeal was resolved she reached a settlement with Empire, and the appeal was dismissed. The settlement agreement contained a noncompetition clause. At no time in the various judicial proceedings did defendant argue for the application of California law, in particular California Business and Professional Code section 16600 ("section 16600"), under which, the parties agree, the noncompetition clause would have been unenforceable; that statute declares, with minor exceptions not relevant to plaintiff's case, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

On April 4, 2000, plaintiff filed this action for legal malpractice in Multnomah County Circuit Court, contending that defendant breached his duty of care by failing to argue in federal district court that California law should have applied; that, had defendant so argued, plaintiff would have prevailed; and that therefore defendant's failure to make the argument caused her damage. The parties filed cross motions for summary judgment. The trial court granted defendant's motion and denied plaintiff's.

Because this case in its current posture presents only legal issues, we review for errors of law. *Trabosh v. Washington County*, 140 Or App 159, 163 n 6, 915 P2d 1011 (1996).

■ The elements of a legal malpractice claim are: "(1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation, i.e.,* a causal link between the breach of duty and the harm." *Stevens v.*

*Bispham*, 316 Or 221, 227, 851 P2d 556 (1993) (emphasis in original). In this case, the existence of an attorney-client relationship (and hence a duty) and the existence of damages are not in dispute; the disputed issues are breach and causation.

Plaintiff begins with the premise that, under California law, the noncompetition clause in her employment contract would be unlawful and of no effect. Defendant conceded that point at trial and does not dispute it on appeal. Plaintiff then argues that, because defendant failed to argue that California law should govern the terms of her employment contract (despite a choice-of-law clause specifying Oregon law), defendant did not meet the standard of care that an attorney has a duty to meet in representing a client. That argument goes to breach of duty. She also maintains that, if defendant had met the standard of care by arguing for the application of California law, he would have prevailed on her behalf and that therefore his failure to make the argument resulted in her loss and consequent damages. That argument goes to causation.

In fact, the two elements—breach and causation—are, in the context of this legal malpractice claim, intertwined, and the causation inquiry is logically prior. That is so because, if we conclude that raising and arguing an issue would properly have made no difference in the outcome of the case because the argument could not properly have prevailed, then that conclusion strongly implies that, in failing to raise and argue the issue, the attorney did not breach a duty. We therefore begin with causation.

More precisely, we begin with the question: Would plaintiff have won her employment contract dispute if defendant had raised and argued that California law applied? To answer that question, we must decide "what the outcome for plaintiff would have been in the earlier case if it had been properly tried, a process that has been described as a 'suit within a suit.' " *Chocktoot v. Smith*, 280 Or 567, 570, 571 P2d 1255 (1977). Because the historical facts are undisputed, the inquiry involves a purely legal issue; we do not ask ourselves what the court *would* have decided or *could* have decided, but

what it *should* have decided under a correct application of the law. *Id.* We turn now to that question.

■     In analyzing a choice-of-law problem, the threshold question is whether the different states' laws actually conflict with each other. *Lilienthal v. Kaufman*, 239 Or 1, 395 P2d 543 (1964). If not, the situation presents a "false conflict," and Oregon law applies. *Angelini v. Delaney*, 156 Or App 293, 300, 966 P2d 223 (1998), *rev den* 328 Or 594 (1999). Here, the California and Oregon laws regarding noncompetition clauses actually conflict. Although each contains a general prohibition qualified by exceptions, those exceptions are so different in scope and quantity in each state as to render the overall laws quite different from each other. Section 16600, as noted above, provides that "every contract by which any-one is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Only three minor statutory exceptions exist, none are relevant here,[1] and the judicially created exceptions are very narrow. *E.g., Robinson v. Jardine Ins. Brokers, Intern. Ltd*, 856 F Supp 554, 558 (ND Cal 1994) (approving, in "certain circumstances," limited-duration noncompetition clauses). In contrast, Oregon law sets forth several conditions under which noncompetition clauses are enforceable, including, as relevant to this case, when the clause is in a contract of "[i]nitial employment of the employee with the employer." ORS 653.295(1)(a).[2] We find this to be a meaningful and germane difference between the two jurisdictions.

---

[1] Those exceptions include provisions for: (1) someone who sells the goodwill of a business, a shareholder who sells all his shares in a corporation, and a shareholder who sells all or substantially all of its operating assets together with the corporation's goodwill to agree with the buyer to refrain from competing in a limited geographical area (section 16691); (2) cases in which a partner agrees not to compete in a specified geographical area following the dissolution of a partnership or similar future event (section 16692); and (3) situations in which a member of a limited liability company agrees that, on the dissolution or sale of his interest, he will not compete in a limited geographical area (section 16602.5).

[2] In declaring when noncompetition agreements are and are not enforceable, ORS 653.295 provides, in relevant part:

"(1) A noncompetition agreement entered into between an employer and employee is void and shall not be enforced by any court in this state unless the agreement is entered into upon the:

"(a) Initial employment of the employee with the employer[.]"

Plaintiff's employment contract case, then, presented a genuine conflict-of-laws issue. We must therefore determine whether defendant's failure to raise that issue caused plaintiff's loss, that is, whether defendant properly would have won plaintiff's case if he had raised the issue on her behalf. Again, defendant does not dispute that, under California law, the noncompetition clause was unenforceable; he argues, rather, that Oregon law, not California law, properly applied. The case was tried in federal court, which, in diversity cases, applies the choice-of-law rules of the state in which the action was filed. *Klaxon Co. v. Stentor Co.*, 313 US 487, 496, 61 S Ct 1020, 85 L Ed 1477 (1941). In this case, that state was Oregon.

Like most jurisdictions, Oregon has abandoned the older conflict-of-laws jurisprudence based on some territorial aspect of the litigation, such as the place where a disputed contract was executed, and adopted in its place the more modern, issue-by-issue, "comparative interest" approach. *See generally* James A. R. Nafziger, *Oregon's Project to Codify Choice-of-Law Rules*, 60 La L Rev 1189, 1189-99 (2000). In cases where the parties' contract specifies that a particular state's law will apply, Oregon courts at the time of the underlying federal case effectuated that choice, subject to the limitations in section 187(2) of the *Restatement (Second) of Conflict of Laws* (1971). *Young v. Mobile Oil Corp.*, 85 Or App 64, 67-68, 735 P2d 654 (1987).[3] That *Restatement* section provides:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied * * * unless * * *

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the

---

[3] In 2001, the Legislative Assembly, adopting a proposal of the Oregon Law Commission, codified the state's conflict-of-laws rules. *See* ORS 81.100 *et seq.*

rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."[4]

Plaintiff does not argue that subsection (a) is relevant to this case; undeniably, Oregon has a "substantial relationship" with the parties in that one is an Oregon corporation and the other was its employee. Thus, in order for an argument in favor of California to have prevailed, it would have been necessary to have demonstrated that *all three* of the following propositions are true: First, giving effect to the noncompetition clause (permitted by Oregon law because it was part of an initial employment contract) is contrary to a "fundamental policy" of California; second, California has a "materially greater interest" than Oregon in the decision whether to enforce the noncompetition clause; *and* third, California law would apply if there were no choice-of-law clause in the contract.

Answering the first of these inquiries requires us to identify the California policy at issue, determine whether it is "fundamental," and then decide whether application of a noncompetition clause is "contrary" to it. The United States Supreme Court has confronted similar questions with notoriously unsatisfactory results, and that is not surprising. To announce that a policy or a right is "fundamental" is to announce a conclusion and not a premise, and the reasoning that leads to the conclusion is almost always obscure, hopelessly subjective, or expressed in verbal formulations that are of little help (for example, "deeply rooted in this Nation's history and tradition," *Moore v. East Cleveland,* 431 US 494, 503, 97 S Ct 1932, 52 L Ed 2d 531 (1977) (plurality opinion), or "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 US 319, 325, 58 S Ct 149, 82 L Ed 288 (1937)). Further, whether a particular interest is deemed "fundamental" under such indeterminate formulations

---

[4] The following portion of the official comment on the scope of the section is instructive:

"The rule of this Section is applicable only in situations where it is established to the satisfaction of the forum that the parties have chosen the state of the applicable law. When the parties have made such a choice, they will usually refer expressly to the state of the chosen law in their contract, and this is the best way of insuring that their desires will be given effect." *Restatement (Second) of Conflict of Laws* § 187, comment a (1971).

depends on the level of generality at which the Court chooses to identify it. To the extent the interest is described at a high level of generality, it is likely to be "fundamental," and *vice versa*. Thus, for example, in determining whether a Georgia law criminalizing sodomy does or does not interfere with a "fundamental" right, the answer depends entirely on whether the right in question is called a "right * * * to engage in sodomy," which is *not* deeply rooted in this nation's traditions, *Bowers v. Hardwick*, 478 US 186, 190, 106 S Ct 2841, 92 L Ed 2d 140 (1986) (majority opinion of White, J.), or "the most comprehensive of rights and the right most valued by civilized men, * * * the right to be let alone," which is. *Id.* at 199 (Blackmun, J., dissenting) (quoting *Olmstead v. United States*, 277 US 438, 478, 48 S Ct 564, 72 L Ed 944 (1928).

Further, every piece of legislation, even the most apparently trivial, implements and therefore indicates the presence of some larger policy, which, in turn, serves an even larger one. A speed limit is not itself a fundamental policy statement, but its purpose is to promote highway safety, which is one way to protect the health, welfare and safety of citizens, which is, of course, one of the most fundamental of all public policies.

Oregon's appellate courts have not escaped these problems. This court has defined a "fundamental policy" as one that is "substantial," "clear," or "overpowering." *Young,* 85 Or App at 69. The Supreme Court has been more elaborate, if not more helpful. In *Schultz v. First Nat. Bk. of Portland et al.*, 220 Or 350, 358, 360, 348 P2d 22 (1959), it declared that a contract would be unenforceable as contrary to fundamental policy if it was "offensive to our moral standards or here regarded as injurious to the public welfare" or if it " 'would violate some fundamental principle of justice, some prevalent conception of good morals [or] some deep-rooted tradition of the common weal' " (quoting *Loucks v. Standard Oil Co.*, 224 NY 99, 111, 120 NE 198, 202 (1918)). Under those amorphous standards, the courts have held the following to be "fundamental policies": "maximum employer implementation of accident study, analysis and prevention programs to reduce the economic loss and human suffering caused by industrial accidents," as stated in ORS

656.012(2)(d), *Young*, 85 Or App at 72; "employers should bear directly or through insurance the cost of injuries to their employes incurred in their service," *Reed v. SAIF*, 63 Or App 1, 4, 662 P2d 776 (1983); and that "execution of search warrants during the day is to be normal and that nighttime searches are to be exceptional," *State v. Brock*, 294 Or 15, 18, 653 P2d 543 (1982). Thus, Oregon courts have not consistently identified "fundamental policies" at any particular level of generality or with reference to any set standard.

Against this daunting background, we conclude that enforcing a noncompetition clause, as permitted by Oregon law, would be contrary to the fundamental policy of California as embodied in section 16600 of its Business and Professional code:

> "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

That provision is itself stated at a high level of generality ("every contract," "lawful profession, trade, or business of any kind"). We need not trace it back several steps before arriving at a policy that is "fundamental" in the dictionary sense: "basic, underlying and primary." *Webster's Third New Int'l Dictionary*, 921 (unabridged ed 1993). The section clearly and directly both states and embodies a policy of limiting the scope of permissible contracts in order to maximize competition and minimize restraints on trade. It has been part of California law since 1872. *Walia v. Aetna, Inc.*, 93 Cal App 4th 1213, 1220, 113 Cal Rptr 2d 737, 746 (2001).[5] Oregon's statute permits individuals to enter into initial employment contracts that can have the effect of limiting competition and restraining trade. It is therefore contrary to California's fundamental policy.

We turn, then, to the question whether California "has a materially greater interest than the chosen state [*i.e.*,

---

[5] We note, in this respect, that a comment to the *Restatement* provides that "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal * * *." *Restatement (Second) of Conflict of Law* § 187, comment g (1971). *But see Shipley Co., L.L.C. v. Kozlowski*, 926 F Supp 28 (D Mass 1996) ("California law does disfavor non-competition provisions, but California does not have a fundamental policy barring all non-competition clauses.").

Oregon] in the determination of the particular issue * * *." *Restatement (Second) of Conflict of Laws* § 187(2)(b). This question, like the "fundamentality" question, presents familiar difficulties. Most obviously, it requires us to compare incommensurables. As Justice Scalia succinctly described the problem, it is like being asked to judge "whether a particular line is longer than a particular rock is heavy." *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 US 888, 897, 108 S Ct 2218, 100 L Ed 2d 896 (1988) (Scalia, J., concurring); *see generally* T. Alexander Aleinikoff, *Constitutional Law in the Age of Balancing*, 96 Yale LJ 943, 972-1005 (1987). In most areas, Oregon appellate courts reject such "weighing" or "balancing" of competing interests. *E.g., State v. Kennedy*, 295 Or 260, 267, 666 P2d 1316 (1983) (refusing to "weigh" various "interests" in order to achieve "a * * * 'balance' of pragmatic considerations about which reasonable people may differ over time"). Further, a method requiring comparison of states' interests raises the problem of how to identify what those interests are: we could rely on our own inferences, legislative history, or the *post hoc* explanations of counsel in the particular case. None of those alternatives is particularly reliable or precise.

However, because section 187(2)(b) would have required application of California law only if that state's interest in the outcome of the underlying contract dispute case were *materially* greater than Oregon's, we do not require a particularly sensitive metric. Plaintiff correctly points out that the underlying litigation involved the enforceability of an important California law expressing a fundamental California policy disfavoring restraints of trade. Further, the case involves a California resident's freedom to contract with a California corporation. On the other hand, Oregon's statute permitting noncompetition clauses in initial employment contracts expresses a fundamental policy as well: protecting the rights of Oregon citizens to choose the terms of their own employment relations free from government interference. In providing a disincentive to leaving one employer for a higher bidder, Oregon's law promotes stable employment relations. It also protects Oregon employers from loss of employees in whose training they have invested

considerable resources. Further, plaintiff was in regular contact with Empire's home office in Portland, attended periodic training and corporate social functions in Oregon, signed the original of her contract in Portland and used brochures and videos that emphasized Oregon roots as part of her sales tools. Her orders were all processed and filed through the Portland office where her commissions were calculated and her paychecks sent out.

We are therefore unable to say with any confidence that California's general or particular interests in the outcome of this case were *any* greater than Oregon's, and we can say with confidence that California's interest were not *materially* greater than Oregon's. Plaintiff cites three California cases that, she says, reach a contrary result. Two of those cases are not on point: neither *Scott v. Snelling and Snelling, Inc.*, 732 F Supp 1034 (ND Cal 1990), nor *Frame v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 20 Cal App 3d 668, 97 Cal Rptr 811 (1971), involves application of section 187(2) or a "materially greater" comparison; rather, both deal exclusively with whether California's noncompetition statute expresses a fundamental policy. The third case, *Application Group, Inc. v. Hunter Group*, 61 Cal App 4th 881, 901-02, 72 Cal Rptr 2d 73, 86 (1998), does hold that California had a materially greater interest in enforcement of its noncompetition statute than the state specified in the contract, Maryland, had in enforcement of the contract's terms. We find that case distinguishable. In describing why Maryland's interest was relatively light, the court noted:

> "[T]here is nothing in the record of this case to support a finding that failure to enforce [the Maryland company's] noncompetition covenant would significantly impair either of [its] asserted interests. * * * There is no showing that she performed 'unique services' for [the Maryland company]."
> *Id.*

In this case, on the other hand, the undisputed facts show that plaintiff's violation of the noncompetition clause did have a significant detrimental impact on Empire's business.

In sum, we conclude that, although enforcement of the noncompetition clause in Empire's contract with plaintiff

would have been contrary to a fundamental California policy, California's interest in the nonenforcement of the clause was not materially greater than Oregon's interest in enforcing it. That determination is fatal to any argument that California law should have applied, regardless of how the conflict-of-laws issue would have come out had the contract been silent on the issue. Plaintiff could not have prevailed had defendant raised and argued for the application of California law. His failure to do so, therefore, did not cause plaintiff to lose in the underlying case, and defendant is not liable for legal malpractice.

Affirmed.