Argued and submitted March 8, 2011, general judgment affirmed; supplemental
judgment reversed and remanded March 14, 2012

## CACV OF COLORADO, LLC,
*Plaintiff-Respondent,*

*v.*

## Gloria J. STEVENS,
*Defendant-Appellant.*

Washington County Circuit Court
C075265CV; A144594

274 P3d 859

Craig Colby argued the cause for appellant. With him on the briefs was Bret Knewtson.

Daniel N. Gordon argued the cause for respondent. With him on the brief was Daniel N. Gordon, P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals general and supplemental judgments in plaintiff's favor in a contract action. The trial court concluded that Oregon's statute of limitation for contract claims, which requires parties to file claims within six years of their accrual, applies to plaintiff's contract claim rather than Delaware's comparable statute, which requires parties to file claims within three years of accrual. Defendant's first two assignments of error challenge the court's conclusion on that issue. We reject defendant's challenge and, accordingly, affirm the general judgment. In her third assignment, defendant contends that the court erred in awarding attorney fees to plaintiff under ORS 20.096(1), which does not impose a specific monetary limit on attorney-fee awards, rather than under a Delaware statute that imposes such a limit. We agree with defendant and, accordingly, reverse and remand the supplemental judgment.

The pertinent facts are undisputed. Defendant is an Oregon resident who opened a credit card account in 2001 with Chase Bank USA, N.A. (Chase), which is a Delaware corporation. The cardholder agreement for the account includes a choice-of-law provision that provides that the agreement is "governed by the laws of the United States and the State of Delaware." The agreement also provides that, in the event that defendant fails to make payments due on the account, Chase is entitled to recover its attorney fees and other costs incurred in collecting the amount that defendant owes.

Defendant eventually defaulted on her accrued credit card debt in May 2003, and Chase charged the debt off roughly seven months later, declaring, in essence, that the debt was unlikely to be collected. Shortly thereafter, Chase sold the account to plaintiff, a Colorado corporation. Plaintiff brought this breach-of-contract action against defendant in Washington County, Oregon, in November 2007, seeking, among other things, recovery of the amount that defendant owes on the account and an award of attorney fees under the attorney-fee provision in the agreement. After unsuccessfully moving to dismiss the case as untimely, defendant filed an answer that alleged a defense that plaintiff's contract claim is time barred.

The parties filed cross-motions for summary judgment on defendant's statute-of-limitation defense. Notwithstanding the provision in the agreement that makes Delaware law the law that generally applies to the agreement, plaintiff contended that its claim was governed by Oregon's statute of limitation for contract claims, ORS 12.080,[1] rather than the comparable Delaware statute, Del Code Ann title 10, § 8106(a).[2] Plaintiff reasoned as follows: Delaware's statute requires contract claims such as plaintiff's claim against defendant to be brought within three years of their accrual. However, Delaware's tolling statute, Del Code Ann title 10, § 8117,[3] delays the running of the Delaware statute of limitation when a defendant resides outside of Delaware and is not otherwise subject to service of process in Delaware, which are conditions that apply to defendant. The result is that the Delaware statute of limitation could be tolled indefinitely. Under ORS 12.450, a court can apply the appropriate Oregon statute of limitation, rather than another state's otherwise applicable statute, if the court determines that the two statutes impose substantially different limitation periods and the other state's statute imposes an unfair burden in defending against the claim. According to plaintiff, those conditions are met in this case because the Delaware statute might never run, so Oregon's six-year limitation period under ORS 12.080 is the applicable limitation period in this case, and plaintiff's claim was timely under it.

---

[1] ORS 12.080 provides that "[a]n action upon a contract or liability, express or implied," must be commenced within six years.

[2] Delaware Code Annotated title 10, section 8106(a), provides, as relevant:

"[N]o action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations * * * shall be brought after the expiration of 3 years from the accruing of the cause of such action[.]"

[3] Delaware Code Annotated title 10, section 8117, provides:

"If at the time when a cause of action accrues against any person, such person is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, such person may be served with process. If, after a cause of action shall have accrued against any person, such person departs from and resides or remains out of the State, the time of such person's absence until such person shall have returned into the State in the manner provided in this section, shall not be taken as any part of the time limited for the commencement of the action."

Conversely, defendant contended that Delaware courts would not interpret the Delaware tolling statute to provide for indefinite tolling in a case such as this case and would, as a consequence, conclude that the tolling statute has no application in this case. Because the tolling statute does not apply, Delaware's three-year statute of limitation applies, not Oregon's six-year statute, and plaintiff's claim was untimely.

The court agreed with plaintiff's contention that Oregon's six-year statute of limitation applies to plaintiff's claim, not Delaware's three-year statute, and accordingly granted plaintiff's motion for summary judgment and rejected defendant's cross-motion for summary judgment on defendant's statute-of-limitation defense. After a jury verdict in plaintiff's favor on its claim, the court entered a general judgment awarding plaintiff the entirety of the outstanding balance owed by defendant on the account, $2,183.03.

## I. STATUTE-OF-LIMITATION DEFENSE

Resolution of the central issue raised in defendant's first and second assignments of error—whether plaintiff's breach-of-contract claim was timely under the applicable statute of limitation—hinges on the outcome of the following successive inquiries:[4] (1) under Oregon's choice-of-law statutes, does Delaware's limitation period—derived from the state's three-year statute of limitation and relevant tolling and accrual laws—apply to plaintiff's claim; (2) if Delaware's limitation period applies, does Delaware's tolling statute toll that period until defendant becomes subject to service of process in Delaware; and (3) if the Delaware tolling statute does that, does Oregon law, *viz.*, ORS 12.450, compel the use of Oregon's rather than Delaware's limitation period in order to remedy the unfair burden that Delaware law would

---

[4] We confronted a similar statute-of-limitation issue in *First Resolution Investment Corp. v. Avery*, 238 Or App 565, 246 P3d 1136 (2010). The defendant contended in *Avery* that the plaintiff's action to recover a credit card debt was barred under New Hampshire's three-year statute of limitation. However, because the Ninth Circuit had held in a federal action between the parties that the New Hampshire statute was tolled under New Hampshire law, we concluded that the defendant was precluded from relitigating the statute-of-limitation issue in the Oregon action, and, therefore, we did not consider the issue. *Id.* at 571.

impose on defendant—namely, the elimination of a statute-of-limitation defense.

## A. *The Applicable Limitation Period*

Under the Uniform Conflict of Laws-Limitations Act (UCLLA), ORS 12.410 - 12.480, if a claim brought in an Oregon court is based on the substantive law of another state, then the other state's limitation period applies to the claim. ORS 12.430. As a corollary principle, the Oregon court must employ the other state's tolling and accrual policies in calculating the other state's limitation period. ORS 12.440.

Here, the credit card agreement specifies that it is governed by Delaware law.[5] Although the parties disagree over whether Delaware's or Oregon's limitation period ultimately applies to plaintiff's claim, they agree that Delaware's substantive law applies to the claim. Further, there does not appear to be any material conflict between Delaware's and Oregon's substantive law for purposes of this case. Therefore, Delaware's substantive law applies to plaintiff's claim,[6] and, accordingly, pursuant to ORS 12.430 and ORS 12.440, Delaware's limitation period—calculated using Delaware's three-year statute of limitation, Del Code Ann title 10, § 8106(a), and relevant tolling and accrual laws—applies to the claim.

## B. *Calculation of Delaware Limitation Period*

In calculating Delaware's limitation period, we begin with Delaware's nonresident tolling statute, Del Code

---

[5] It also provides that it is governed by federal law, but federal law is not the source of a statute of limitation that applies to plaintiff's claim.

[6] In most contexts, *former* ORS 81.100 to 81.135 (2009), *renumbered as* ORS 15.300 to 15.380 (2011), provides the framework to be used by an Oregon court in determining what state's law applies when the court enforces a contract. *Capital One Bank v. Fort*, 242 Or App 166, 170 n 3, 255 P3d 508 (2011). Under *former* ORS 81.102, those statutes do "not apply to any contract in which one of the parties is a financial institution, as defined by 15 U.S.C. 6827." The legislature amended that provision in 2011 to limit its scope before renumbering it as ORS 15.305. *See* Or Laws 2011, ch 129, § 1. The 2011 amendment does not apply to civil actions that were commenced before May 19, 2011, Or Laws 2011, ch 129, §§ 2, 3, and plaintiff filed this action on November 19, 2007. Consequently, we apply the 2009 version of *former* ORS 81.102, and, because the cardholder agreement was originally entered into by defendant and Chase—a financial institution under 15 USC section 6827— *former* ORS 81.100 to 81.135 do not apply in this case.

Ann title 10, § 8117, to determine its effect on the three-year Delaware limitation statute that applies to plaintiff's claim. Delaware case law does not directly resolve the issue;[7] therefore, we look to Delaware's statutory interpretation principles and related case law to determine the effect of the Delaware tolling statute in this context.[8]

Similarly to Oregon, the principles of statutory interpretation in Delaware have been developed with the aim of ascertaining the intent of the legislature. *Chase Alexa, LLC v. Kent County Levy Court*, 991 A2d 1148, 1151 (Del 2010). In determining whether a statute is ambiguous, the pertinent Delaware statute, Del Code Ann title 1, § 303, instructs that "[w]ords and phrases [in statutes] shall be read with their context and shall be construed according to the common and approved usage of the English language." However, if the "literal interpretation [of the] words of [a] statute would lead to such unreasonable or absurd consequences as to compel a conviction that [the words] could not have been [so] intended by the legislature," then the statute is ambiguous. *Coastal Barge Corp. v. Coastal Zone Indus.*, 492 A2d 1242, 1246 (Del 1985); *see also Delaware Bay Surgical Services v. Swier*, 900 A2d 646, 652 (Del 2006) (asserting that, if uncertainty about the meaning of words in a statute persists, then the "statute must be construed to avoid mischievous or absurd results" (internal quotation marks omitted)). Put another way, *viz.*, the so-called "golden rule of statutory interpretation" in Delaware law, "unreasonableness of the result produced by one among alternative possible

---

[7] As explained below, 248 Or App at 632, the dearth of Delaware case law interpreting section 8117 in this context—*viz.*, where a defendant-consumer in an action brought to collect a debt is not a resident of Delaware or subject to service of process in Delaware—is a predictable consequence of a proscription in federal law against maintaining such an action in a Delaware court against a nonresident defendant-consumer who did not sign the contract on which the debt is based in Delaware. Because actions of that type cannot be brought in Delaware, Delaware courts have not had occasion to determine the effect of the tolling statute in such actions.

[8] In that regard, the official commentary to the UCLLA states that the provision embodied in ORS 12.440 "treats all tolling and accrual provisions as substantive parts of the limitations law of any state whose law may be held applicable. They are part of that state's law *as that state would apply it.*" Uniform Conflict of Laws-Limitations Act § 3 Comment, 12 ULA 161 (2008) (emphasis added).

interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." *Coastal Barge Corp.*, 492 A2d at 1247.

With those principles in mind, we turn to section 8117, which, again, provides:

> "If at the time when a cause of action accrues against any person, such person is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, such person may be served with process. If, after a cause of action shall have accrued against any person, such person departs from and resides or remains out of the State, the time of such person's absence until such person shall have returned into the State in the manner provided in this section, shall not be taken as any part of the time limited for the commencement of the action."

Del Code Ann title 10, § 8117. By its terms, the statute tolls Delaware statutory limitation periods "as to defendants who, at the time the cause of action accrues, are outside the state and are not otherwise subject to service of process in the state." *Saudi Basic Industries v. Mobil Yanbu Pet.*, 866 A2d 1, 18 (Del), *cert den*, 546 US 936 (2005). Further, the tolling statute does not expressly limit its application to cases filed in Delaware; hence, the tolling statute appears to apply to plaintiff's action and to toll the running of the Delaware statute of limitation in it.

According to defendant, however, that understanding of the statute does not withstand scrutiny in the face of the unique considerations presented when the statute is applied in an action filed in a state other than Delaware against a defendant-consumer, who, under federal law, could only be sued in the other state. Specifically, under the federal Fair Debt Collection Practices Act (FDCPA):

> "Any debt collector who brings any legal action on a debt against any consumer shall—
>
> "(1)  in the case of an action to enforce an interest in real property securing the consumer's obligation, bring

such action only in a judicial district or similar legal entity in which such real property is located; or

"(2)    in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—

"(A)    in which such consumer signed the contract sued upon; or

"(B)    in which such consumer resides at the commencement of the action."

15 USC § 1692i(a). The FDCPA preempts any contrary state venue law for debt-collection actions. 15 USC § 1692n.

Because defendant did not sign the credit card agreement in Delaware and has never resided in Delaware—much less when plaintiff filed its claim—*federal law precludes plaintiff from bringing this action in Delaware* until such time, if ever, that defendant moves there. Therefore, the Delaware tolling statute could indefinitely toll the three-year statute of limitation in an action against a defendant-consumer who neither resides in nor is subject to service of process in Delaware and who would have to be sued pursuant to the FDCPA in the state in which he or she resides, that is, in a state other than Delaware.

Defendant contends that that result—the potential abolition of a statute-of-limitation defense for some nonresident defendants sued outside of Delaware—is an unreasonable and absurd consequence that the Delaware legislature could not have intended in enacting the tolling statute and, accordingly, the statute should be construed under Delaware law in a way to avoid that result. In so arguing, defendant relies on decisions from courts in other jurisdictions that were presented with facts nearly identical to those presented in this case, *viz., McCorriston v. L.W.T., Inc.*, 536 F Supp 2d 1268 (MD Fla 2008), and *Resurgence Financial, LLC v. Chambers*, 92 Cal Rptr 3d 844 (Cal App Dep't Super Ct 2009).[9]

---

[9] In support of her proposed construction of the tolling statute, defendant also relies on the following statement by the Delaware Supreme Court in *Hurwitch v. Adams*, 155 A2d 591, 593-94 (Del 1959):

"First, it is said that [the nonresident tolling statute, Del Code Ann tit 10, § 8117, which was numbered section 8116 at the time,] is plain on its face and that it applies in any action in which the defendant is a non-resident. We think

In *McCorriston*, the plaintiff, a consumer, defaulted on her credit card account, and one of the defendants, to which the account had been assigned by the credit card issuer, sued her on the debt in a Florida court roughly three and one-half years after the default. 536 F Supp 2d at 1271-72. The Florida court dismissed the action on statute-of-limitation grounds pursuant to Delaware's three-year statute of limitation, which applied under the choice-of-law provision in the cardholder agreement. Because of that dismissal, the plaintiff brought an action in federal district court alleging violations by defendants of the FDCPA, including a violation of 15 USC section 1692e(2)(A) by filing the time-barred state action to collect the debt. Seeking protection from liability through the "bona fide error" exception under

---

this argument, if accepted, would result in the abolition of the defense of statutes of limitation in actions involving non-residents, but the answer to the argument lies in the direct holding of [*Lewis v. Pawnee Bill's Wild West Co.*, 66 A 471 (Del 1907),] to the contrary."

In *Hurwitch*, the court considered whether the tolling statute tolled Delaware's one-year statute of limitation for personal injury actions. After explaining that it had held in *Lewis* that the one-year statute of limitation and the tolling statute operate completely independently of each other, the court went on to conclude that the tolling statute does not toll the relevant statute of limitation when a defendant is subject to service of process in Delaware. 155 A2d at 594. Therefore, because the defendants in *Hurwitch* were subject to substitute service of process, the court held that the one-year statute of limitation was not tolled. *Id.*

The isolated statement regarding the "abolition" of the statute-of-limitation defense as a result of a literal interpretation of the tolling statute does not have the import that defendant attributes to it. The *Hurwitch* opinion addressed a circumstance in which the defendants were subject to service of process in Delaware—causing the tolling statute to be inapposite by its terms. Further, the Delaware Supreme Court in *Saudi Basic Industries* cited *Hurwitch* in applying the tolling statute to the three-year statute of limitation applicable in this case, and, as explained below—248 Or App at 636—the court's decision in *Saudi Basic Industries* supports a literal construction of the tolling statute.

In light of *Saudi Basic Industries*, it is apparent that the *Hurwitch* court was simply rejecting an interpretation of the tolling statute that would toll statutes of limitation in actions against nonresident defendants who were subject to service of process under Delaware's long-arm statute, that is, in actions in which the nonresident defendants could be sued *in Delaware* within the applicable limitation period. The *Hurwitch* court quite sensibly concluded that the Delaware legislature did not intend the tolling statute to do that, *viz.*, to abolish the statute-of-limitation defense for *all* nonresident defendants. That is a different question, however, from that presented in *Saudi Basic Industries* and this case, which is whether the tolling statute tolls statutes of limitation in actions against nonresidents who could *not* be sued in Delaware within the applicable limitation period.

the FDCPA,[10] the defendants argued that section 8117 prevented the Delaware statute of limitation from running even though the defendants had sued the plaintiff in Florida—and not in Delaware—and, therefore, that the "bona fide error" defense applied to the plaintiff's federal action. *McCorriston*, 536 F Supp 2d at 1275-76.

After quickly reviewing Delaware case law, the federal district court identified the general purpose of the tolling statute: "When a non-resident defendant is sued in Delaware, but is outside its jurisdiction, the statute of limitations is tolled until the defendant is available to be served in Delaware." *Id.* at 1276. Despite that explanation of legislative intent, the district court concluded that the defendants' proposed construction of the tolling statute—which could result in the indefinite tolling of "lawsuits filed in states other than Delaware, notwithstanding that those lawsuits were filed against account holders who were never in Delaware, but who are subject to service in the state in which the suit was filed"—injected an "inherent ambiguity" into the tolling statute by abolishing the statute-of-limitation defense for nonresident defendants who, pursuant to the FDCPA, could not be sued in Delaware. *Id.* To avoid that "illogical and unreasonable result," the court concluded that the tolling statute did not apply in the Florida action against the plaintiff and, therefore, Delaware's three-year statute of limitation had run unimpeded before the defendants had filed their Florida action. *Id.* at 1276-77.

To similar effect is *Resurgence Financial*. In *Resurgence Financial*, the defendant, a consumer, defaulted on a credit card account, and the plaintiff, to which the account had been assigned, sued her in a California court to recover the debt roughly four years after the default. 92 Cal Rptr 3d at 846. The defendant appealed a trial court judgment in the plaintiff's favor, arguing that the action was barred by Delaware's three-year statute of limitation, which

---

[10] 15 USC section 1692k(c) provides:

"A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

applied in the action pursuant to the choice-of-law provision in the cardholder agreement. In response, the plaintiff contended that the statute of limitation had been tolled under section 8117. After stating the principles of statutory interpretation used by Delaware courts and quickly canvassing relevant Delaware case law, the court noted that "[t]he purpose of section 8117 is to protect persons seeking to file suit in *Delaware* from defendants who have made filing suit in *Delaware* difficult or impossible." *Id.* at 847 (emphasis in original). The court went on to explain that "[t]here is no reason for the Delaware Legislature to extend the limitations period with respect to actions that are not filed in Delaware and could not be filed in Delaware [under the FDCPA]." *Id.* at 848. The court ultimately concluded, after favorably recounting the analysis in *McCorriston,* that "[a]pplying * * * Delaware's tolling statute to a case filed in California in these circumstances would be absurd" and, therefore, the statute did not toll the three-year statute of limitation, making the plaintiff's action untimely. *Id.*

At first blush, those cases would appear to compel the conclusion that defendant advocates—*viz.*, that the potential indefinite tolling of the limitation period in this case resulting from a literal application of the Delaware tolling statute would be an absurd result that Delaware courts would reject. However, a recent Delaware Supreme Court decision cited in those cases compels the opposite conclusion—one that comports with the literal meaning of the tolling statute and the general legislative policy underlying it, which is to toll the applicable statute of limitation until the defendant is subject to service of process in Delaware rather than to require the plaintiff to bring the action within the limitation period in a state in which the defendant is subject to service of process.

In *Saudi Basic Industries,* the plaintiff—a Saudi Arabian corporation predominately owned by the Saudi government—brought an action in federal district court in New Jersey and then in a Delaware court seeking a declaratory judgment that it had not violated a joint-venture agreement that it had with the defendants. 866 A2d at 10. In response, the defendants asserted counterclaims against the plaintiff in the Delaware action seeking damages for the plaintiff's

breach of the agreement, on which the defendants ultimately prevailed at trial. On appeal, the plaintiff contended, among other things, that the defendants' counterclaims were subject to Delaware's three-year statute of limitation—and not Saudi Arabia's procedural law governing limitation periods—and, because the counterclaims had accrued roughly 20 years before the defendants had filed them, the claims were time barred. *Id.* at 14-15.

Notwithstanding its conclusion that Delaware's three-year statute of limitation did not apply in the case, the Delaware Supreme Court addressed—as an independent, alternative basis for its holding that the defendants' counterclaims were timely—whether section 8117 tolled the three-year limitation period. *Id.* at 18-19. The court stated the legislative purpose of the tolling statute from a literal reading of it and then identified the unique circumstances bearing on the court's application of the statute in the case. Specifically, before the plaintiff brought the declaratory judgment action in Delaware, (1) the plaintiff was not a Delaware resident; (2) the plaintiff lacked sufficient contacts with Delaware to support long-arm jurisdiction over it had the defendants filed a Delaware action against it; (3) the plaintiff was not amenable to service of process in the state; and (4) under federal law, *viz.*, the Foreign Sovereign Immunities Act of 1976 (FSIA),[11] the plaintiff *could not be sued in the United States—* much less in Delaware. *Saudi Basic Industries*, 866 A2d at 18, 18 n 38. After noting that the federal district court had determined that the plaintiff had waived its FSIA immunity from suit by initiating its declaratory judgment actions, *id.* at 18 n 38, the Delaware court concluded that "[o]nly by voluntarily initiating this action in Delaware as plaintiff did [the plaintiff] 'come[ ] into the State' and thereby become amenable to service of process," *id.* at 18 (quoting Del Code Ann title 10, § 8117) (third brackets in original). Therefore, the Delaware three-year statute of limitation for the defendants' counterclaims was tolled until the plaintiff brought the declaratory judgment action in Delaware.

The import of *Saudi Basic Industries* for this case is that the Delaware Supreme Court applied a literal

---

[11] 28 USC §§ 1602 - 1611.

interpretation of section 8117—*viz.*, so long as a defendant who at some point could be sued in Delaware is outside of the state and not otherwise subject to service of process in the state, then the applicable statute of limitation is tolled— despite the fact that federal law prevented a plaintiff from suing a nonresident defendant in Delaware absent some affirmative action by the defendant. In both *Saudi Basic Industries* and this case, the nonresident defendant conceivably could be sued in Delaware at some point. In the former case, the plaintiff *could be sued in Delaware* by the defendants, notwithstanding the FSIA, if the plaintiff appeared in a Delaware court and waived its immunity under federal law; in this case, defendant *could be sued in Delaware* by plaintiff, notwithstanding the FDCPA, if she became a Delaware resident. Further, if the plaintiff in *Saudi Basic Industries* had not waived its immunity, then the three-year statute of limitation would have been indefinitely tolled under section 8117, according to the literal reading that the court gave the statute in that case—a result that the Delaware court implicitly assumed was not unreasonable or absurd.

Therefore, we conclude, contrary to the analysis in *McCorriston* and *Resurgence Financial*,[12] that Delaware courts would apply a literal interpretation of the tolling statute in calculating the limitation period for plaintiff's claim in this case.[13]

We also reject defendant's argument that Delaware courts would not apply a literal interpretation of the tolling statute in these circumstances because, under that interpretation, the statute would violate the Commerce Clause, as

---

[12] Those cases are also distinguishable from this case because neither Florida nor California has enacted the UCLLA, and, therefore, neither court could take advantage of the UCLLA's "escape clause" in a case such as this. We discuss that provision below, 248 Or App at 639.

[13] In arriving at that conclusion, we also necessarily reject an interpretation of the Delaware tolling statute under which the statute would apply differently depending on where a plaintiff brought the action—that is, an interpretation that would toll a claim if a plaintiff chose to wait to bring it until the defendant was subject to service of process in Delaware, but would not toll the claim if the plaintiff took the initiative to file it against the defendant in another state. In other words, we reject an interpretation under which, in a case such as this case, the claim would be untimely under Delaware law if filed against defendant in Oregon more than three years after its accrual, but it would be timely under Delaware law if filed in Delaware within three years after defendant moved to the state.

applied by the Supreme Court in *Bendix Corp. v. Midwesco Enterprises*, 486 US 888, 108 S Ct 2218, 100 L Ed 2d 896 (1988).

In *Bendix*, the Supreme Court considered whether Ohio's nonresident tolling statute violated the Commerce Clause, when applied to non-Ohio corporations, because the statute presented a situation in which a state—Ohio—was denying "ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce." 486 US at 893. To avoid having claims against it be subject to tolling, a foreign corporation had to appoint a resident agent for service of process in Ohio and thereby become subject to the state's general jurisdiction. *Id.* at 892. The Court concluded that the burden imposed on interstate commerce by the Ohio tolling statute—*viz.*, requiring foreign corporations to choose between subjecting themselves to general jurisdiction in Ohio or forfeiting a statute-of-limitation defense—exceeded the state's interest in enacting the tolling statute, reasoning that

> "Ohio cannot justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, for it is conceded by all parties that *the Ohio long arm statute would have permitted service on [the defendant] throughout the period of limitations.*"

*Id.* at 894 (emphasis added). Although a state may have an interest in ensuring that its residents can litigate claims in its courts against nonresident defendants by tolling state statutes of limitations until state residents are able to bring those claims, *Bendix* stands for the proposition that the Commerce Clause prevents a state from using a tolling statute to deny a statute-of-limitation defense to nonresident defendants who are subject to the state's long-arm statute. *See, e.g., Bottineau Farmers Elevator v. Woodward-Clyde*, 963 F2d 1064, 1074 (8th Cir 1992) ("As in *Bendix*, the state's interest in assisting its residents in litigating against nonresident defendants, when long-arm service of process is available, cannot justify the imposition of a greater burden on non-residents than residents."). That principle has no application to Delaware's tolling statute because the statute does not toll the running of statutes of limitation on claims

against nonresidents who are subject to Delaware's long-arm statute. *See, e.g., Brossman v. Federal Deposit Ins. Corp.*, 510 A2d 471, 472 (Del 1986) ("If a defendant is not subject to service [of process] when a cause of action accrues against [it], the relevant statute of limitations will be tolled until the plaintiff, by reasonable diligence, may serve [it] with process.").

C. *"Escape Clause" Under ORS 12.450*

Because the Delaware statute of limitation would be tolled in this case, we must determine whether ORS 12.450 operates to compel the use of Oregon's six-year limitation period instead. Under ORS 12.450, Oregon's limitation period—derived from Oregon's relevant statute of limitation and tolling and accrual laws—applies instead of another state's limitation period when the other state's limitation period (1) is substantially different from Oregon's limitation period and (2) "has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against the claim." Importantly, the official commentary to the UCLLA notes that the provision embodied in ORS 12.450 "provides an 'escape clause' that will enable a court, in extreme cases, to do openly what has sometimes been done by indirection, to avoid injustice in particular cases." Uniform Conflict of Laws-Limitations Act § 4 Comment, 12 ULA 162 (2008).

Here, the difference between Oregon's limitation period under ORS 12.080—six years without tolling because defendant is an Oregon resident—and Delaware's limitation period—which could run indefinitely because defendant may never become subject to service of process in Delaware—is indisputably substantial. Furthermore, the possibility that Delaware's limitation period for plaintiff's claim could be indefinitely tolled indisputably imposes an unfair burden on defendant in defending against the claim—*viz.*, defendant would be unable to avail herself of a statute-of-limitation defense.[14] *See Unifund CCR Partners v. Sunde*, 163 Wash

---

[14] The imposition of an unfair burden on a defendant through the application of another state's tolling statute was specifically anticipated by the drafters of the UCLLA:

"It should be noted that Section 3 [ORS 12.440] could conceivably give rise to application of the 'unfairness' exception in Section 4 [ORS 12.450], for example, if a state tolls the running of its limitation period because of a defendant's physical absence from the state even though he [or she] is at all times subject

App 473, 489, 260 P3d 915, 924 (2011) (reaching same conclusions).

Because the two requirements under ORS 12.450 are met, we conclude that Oregon's six-year limitation period applies in this case. Defendant defaulted on her account in May 2003, and plaintiff brought its breach-of-contract claim in November 2007, which is within six years of its accrual. Therefore, the trial court did not err in concluding that plaintiff's claim was timely, and, accordingly, it did not err in granting plaintiff's motion for summary judgment and denying defendant's cross-motion for summary judgment on defendant's statute-of-limitation defense.

## II. PLAINTIFF'S ATTORNEY-FEE ENTITLEMENT

After prevailing at trial, plaintiff sought to recover $24,262.50 in attorney fees pursuant to the terms of the credit card agreement. Defendant objected to plaintiff's request, arguing, among other things, that Delaware law applies under the choice-of-law provision of the agreement, and, under Delaware law, the attorney fees that may be awarded to plaintiff are limited to 20 percent of the principal and interest that plaintiff recovered in the action. Despite defendant's objection, the court awarded plaintiff its attorney fees pursuant to Oregon law and, after considering the factors listed in ORS 20.075, entered a supplemental judgment awarding plaintiff $5,000 in attorney fees.

Defendant argues on appeal that the court erred in awarding plaintiff its attorney fees under Oregon law, which does not impose a monetary limit on contractual awards of attorney fees, rather than under Delaware law, which, under

> to service under a [long-arm] statute. Tolling under such circumstances is unfair, and should be eliminated. Reliance upon the * * * exception seems preferable, however, to complete disregard of tolling provisions."

Uniform Conflict of Laws-Limitations Act § 3 Comment, 12 ULA 162 (2008). Notwithstanding that the tolling statute used as an example by the drafters would likely violate the Commerce Clause under *Bendix*, when applied to defendants involved in interstate commerce, the thrust of the example remains: The drafters of the UCLLA contemplated unfairness resulting from the application of another state's tolling statute in calculating the applicable limitation period under the act.

Delaware Code Annotated title 10, section 3912,[15] limits a plaintiff's attorney-fee award in actions brought to enforce various written instruments to 20 percent of the principal and interest recovered in the action. In response, plaintiff contends that a different Delaware statute applies to the award of attorney fees in this case—*viz.*, Delaware Code Annotated title 5, section 951,[16] which governs a bank's entitlement to attorney fees against a borrower who defaults on a credit card account with the bank—and that statute does not impose a monetary limit on the award. As explained below, defendant has the better of the argument.

Before reaching the issue whether Oregon or Delaware law applies to plaintiff's attorney-fee entitlement, we must determine whether there is a material difference between Oregon's and Delaware's substantive law governing that entitlement. *See Angelini v. Delaney*, 156 Or App 293, 300, 966 P2d 223 (1998), *rev den*, 328 Or 594 (1999) (threshold issue in conflict-of-law analysis is whether "there is a material difference between Oregon substantive law and the law of the other forum"). If section 951 were the applicable Delaware law, then plaintiff would be entitled to an award of

---

[15] Delaware Code Annotated title 10, section 3912, provides, in relevant part:

"In all causes of action, suits, matters or proceedings brought for the enforcement of any note, bond, mechanics lien, mortgage, invoice or other instrument of writing, if the plaintiff or lien holder in the action, suit or proceeding recovers judgment in any sum, the plaintiff or lien holder may also recover reasonable counsel fees, which shall be entered as a part of the judgment in the action, suit or proceeding. *Such counsel fees shall not in any such action, suit or proceeding, exceed 20 percent of the amount adjudged for principal and interest.* Such counsel fees shall not be entered as a part of such judgment unless the note, bond, mortgage, invoice or other instrument of writing sued upon, by the terms thereof, expressly provides for the payment and allowance thereof[.]"

(Emphasis added.)

[16] Delaware Code Annotated title 5, section 951, provides:

"In the event a borrower defaults under the terms of a plan, the bank may, if the borrower's account is referred to an attorney (not a regularly salaried employee of the bank) or to a third party for collection and if the agreement governing the revolving credit plan so provides, *charge and collect from the borrower a reasonable attorney's fee*. In addition, following a borrower's default, the bank may, if the agreement governing the plan so provides, recover from the borrower all court, alternative dispute resolution or other collection costs (including, without limitation, fees and charges of collection agencies) actually incurred by the bank."

(Emphasis added.)

its reasonable attorney fees without monetary limitation, which is consistent with plaintiff's attorney-fee entitlement under Oregon law, and, therefore, there would be a "false conflict" between Oregon and Delaware law, obviating the need to engage in any further conflict-of-law analysis. However, if section 3912 is the applicable Delaware statute, then Oregon and Delaware law would be materially different— there would be no monetary limit on plaintiff's attorney-fee award under Oregon law but there would be a limit under Delaware law. Therefore, to determine whether Oregon and Delaware law are materially different, we first have to decide which of the Delaware statutes applies in this case.

Section 3912 provides that a plaintiff who prevails in an action to enforce any "note, bond, mechanics lien, mortgage, invoice[,] or *other instrument of writing*" may recover its reasonable attorney fees if the written instrument that the plaintiff seeks to enforce creates an attorney-fee entitlement, but the attorney-fee award shall not "exceed 20 percent of the amount adjudged for principal and interest." (Emphasis added.) The legislature's purpose in enacting section 3912 was to ensure that debtors bear part of the expense incurred by their creditors in collecting the debts that they owe. *See Petitions of Warrington*, 179 A 505, 507 (Del 1935) ("The purpose of [an earlier version of section 3912] was to impose upon a debtor some part, at least, of the expense of collecting the debt evidenced by his [or her] obligation, if legal action should become necessary, and to set at rest the doubt that a provision in an obligation authorizing the inclusion of a counsel fee, or collection charge, is void as against public policy.").

Because a credit card agreement is not one of the enumerated types of writings in the statute—*viz.*, notes, bonds, mechanics liens, mortgages, or invoices—it has to fall within the catch-all term "other instrument of writing" for the statute to apply. The definition of "instrument" as a legal term of art is a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." *Black's Law Dictionary* 869 (9th ed 2009). And the types of legal documents enumerated in section 3912 all share a common characteristic: they are all written documents that establish a debtor-creditor

relationship that may ultimately lead to the creditor incurring expenses to collect the debt memorialized in the writing. With that context in mind, and in keeping with the Delaware legislature's intent in enacting section 3912, we conclude that "other instrument of writing" refers to nonenumerated types of written legal documents, including contracts, that create a debtor-creditor relationship and that ultimately may be enforced by the creditor through legal action or otherwise.[17]

Here, plaintiff, the creditor under the credit card agreement, prevailed in its action to enforce the agreement—a written instrument—against defendant, and the agreement includes an attorney-fee entitlement. Therefore, in accordance with the legislature's intent to ensure that debtors are accountable in some part for their creditor's collection efforts, section 3912 would apply if Delaware law, and not Oregon law, is the proper substantive law to apply in this case. Plaintiff's argument to the contrary—*viz.*, that section 951 would apply under Delaware law—misses the mark.

Section 951 provides that a *bank* may recover its reasonable attorney fees, without any monetary limitation, against a borrower who has defaulted under a revolving credit plan[18] if the *bank* refers the borrower's account "to an attorney (not a regularly salaried employee of the bank) or to a third party for collection and if the agreement governing the revolving credit plan so provides." Although the statute specifically addresses a *bank's* attorney-fee entitlement when

---

[17] *See Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.*, No 3369-VCP, WL 571934 at *2 (Del Ch Feb 5 2010), *aff'd*, 7 A3d 486 (Del 2010) ("The first five of the six items in [the list in section 3912] explicitly pertain to writings that evidence a debt. This implies that the final and catch-all item, 'other instrument of writing,' refers to a class of items that are also writings that evidence a debt, but do not fit squarely within the scope of one of the preceding items. That is, to qualify as an 'other instrument of writing' within the meaning of [section 3912], a writing would have to evidence a debt.").

[18] For purposes of section 951, Delaware Code Annotated title 5, section 941(4), defines a "revolving credit plan" as, in relevant part:

"[A] plan contemplating the extension of credit under an account governed by an agreement between a bank and a borrower pursuant to which:

"a. The bank permits the borrower * * * from time to time to make purchases and/or to obtain loans by use of a credit device[.]"

The definition of a credit device under the statute includes a credit card. Del Code Ann title 5, § 941(7).

a third party collects a debt for the bank, and plaintiff is not a bank, plaintiff nonetheless argues that section 951 applies because plaintiff "acquired [from Chase] all rights contained in the contract including the right to attorney[ ] fees." With the argument so focused, the inquiry becomes whether the Delaware legislature intended that a bank's statutory right to recover attorney fees applies to a third party to which the bank has assigned the bank's contractual rights against a debtor under a revolving credit plan.

In enacting section 951, according to the legislative history provided by defendant, the legislature sought to "permit[ ] *a bank* which is compelled to institute collection proceedings on a defaulted account to collect from the borrower a reasonable attorney's fee and any related court or other costs of collection." Synopsis, Delaware House of Representatives, HB 28, Jan 5, 1981, at 52 (emphasis added).[19] So stated, the purpose of the statute was to ensure that banks that referred debts to third parties for collection *on the bank's behalf* could recover their attorney fees. Therefore, and in the absence of Delaware case law interpreting the statute, we conclude that the specific use of the term "bank" in section 951 creates a *statutory* entitlement to attorney fees for banks that does not apply in a collection action on a debt assigned by a bank to a third party in which the third party collects the assigned debt *on its own behalf*. We conclude, accordingly, that section 951 would not apply in this case under Delaware law.

Because ORS 20.096(1)[20] and section 3912 materially differ—presenting a conflict between Oregon and Delaware law—we must conduct a comparative-interest analysis on an issue-by-issue basis to determine which state's

---

[19] For purposes of section 951, Delaware Code Annotated title 5, section 941(1), defines "bank" as

"any bank or bank and trust company organized under this title or any other law or laws of this State, any depository institution organized under the authority of the United States and having its principal place of business in this State and any foreign bank agency."

[20] ORS 20.096(1) provides, as relevant:

"In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements[.]"

law applies to the recovery of attorney fees under the credit card agreement. *Capital One Bank v. Fort*, 242 Or App 166, 170, 255 P3d 508 (2011).[21] Further, in light of the fundamental premise under Oregon law that the intent of the parties to a contract controls a court's interpretation of it, we will enforce a choice-of-law provision in a contract subject to the restrictions described in *Restatement (Second) of Conflict of Laws* section 187(2) (1971).[22] *Young v. Mobil Oil Corp.*, 85 Or App 64, 67-68, 735 P2d 654 (1987); *see also Machado-Miller v. Mersereau & Shannon, LLP*, 180 Or App 586, 592-93, 43 P3d 1207 (2002) (same). Section 187(2) provides:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied, * * * unless either

"(a)   the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b)   application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

The exception in subsection (a) is inapposite because Chase is a Delaware corporation, and, therefore, the chosen state, Delaware, has a substantial relationship to a contracting party.[23] Consequently, the determinative inquiry is whether subsection (b) establishes that Oregon law should apply to

---

[21] Because that determination must be made on an issue-by-issue basis, our conclusion that Delaware's substantive law generally applies to plaintiff's contract claim, *see* 248 Or App at 629, does not resolve which state's law applies to plaintiff's contractual attorney-fee entitlement, which is a discrete issue.

[22] As explained above, *former* ORS 81.100 to 81.135 do not apply in this case. *See* 248 Or App at 629 n 6. For that reason, we must employ Oregon's common-law choice-of-law principles.

[23] In that regard, comment f to section 187 of *Restatement (Second) of Conflict of Laws* provides:

"When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when [the chosen] state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has [its] principal place of business."

plaintiff's contractual attorney-fee entitlement, which hinges on the resolution of the following question: Assuming, without deciding, that Oregon has a materially greater interest in the attorney-fee issue and that Oregon law would apply in the absence of the choice-of-law provision, would the application of Delaware's 20 percent limit on a plaintiff's recovery of its contractual attorney fees be contrary to a fundamental policy of Oregon?

Determining whether an Oregon policy is fundamental presents inevitable difficulties stemming from the fact that the determination depends on the application of amorphous legal standards, including that the policy must be clear and overpowering, *Young*, 85 Or App at 69. As we recognized in *Machado-Miller*:

> "To announce that a policy or a right is 'fundamental' is to announce a conclusion and not a premise, and the reasoning that leads to the conclusion is almost always obscure, hopelessly subjective, or expressed in verbal formulations that are of little help * * *."

180 Or App at 593 (citations omitted). Those difficulties are compounded here, where the purported fundamental Oregon policy—*viz.*, that a prevailing party may recover its reasonable contractual attorney fees without a monetary limit—is not directly embodied in a statute or case law. Rather, the policy rests on two premises: (1) a prevailing party may recover its reasonable attorney fees under ORS 20.096(1) so long as the party has a contractual attorney-fee entitlement and (2) nothing in Oregon law imposes a specific monetary limit on the attorney fees to which the prevailing party is entitled.

The *absence* of Oregon law on the imposition of a specific monetary limit on attorney-fee awards cannot establish that Oregon has a fundamental policy *against* the imposition of such a limit. In other words, an affirmative policy *against* the imposition of a specific monetary limit on attorney-fee awards would have to be identified in Oregon law for there to be a basis to consider whether such a policy is a fundamental policy, and we know of no such affirmative policy in Oregon law.[24] Further, the arguably fundamental Oregon policy

---

[24] Consistently with our conclusion, *former* ORS 81.125(1) provides that, in resolving conflicts of law involving contracts to which the statute applies:

implicated by ORS 20.096(1)[25]—that a prevailing party is entitled to its contractual attorney fees to the extent that they are reasonable—is in accord with section 3912, which caps a prevailing plaintiff's contractual entitlement to *reasonable* attorney fees. Therefore, under the choice-of-law provision in the credit card agreement, section 3912 applies to the determination of the amount of attorney fees that plaintiff may recover, and, under that statute, plaintiff is entitled to its reasonable attorney fees not exceeding 20 percent of its $2,183.03 award for principal and interest.

In sum, the court did not err in granting plaintiff's motion for summary judgment and denying defendant's cross-motion for summary judgment on defendant's statute-of-limitation defense, and accordingly, we affirm the general judgment. However, the court erred in awarding plaintiff its reasonable attorney fees under ORS 20.096(1) rather than under Delaware Code Annotated title 10, section 3912, and, accordingly, we reverse and remand the supplemental judgment.

General judgment affirmed; supplemental judgment reversed and remanded.

---

"The law chosen by the parties * * * does not apply to the extent that its application would:

"* * * * *

"(c) Contravene an established fundamental policy *embodied* in the law that would otherwise govern the issue in dispute * * *."

(Emphasis added.) Although *former* ORS 81.125(1) does not apply to this case, *see* 248 Or App at 629 n 6, it reflects a general legislative policy on the identification of fundamental policies in the choice-of-law context.

[25] This case does not implicate Oregon's fundamental policy under ORS 20.096(1) of making attorney-fee provisions in contracts reciprocal. *See Capital One Bank*, 242 Or App at 172 (concluding, in resolving a conflict between Oregon and Virginia law, that the policy choice in ORS 20.096 in favor of reciprocity is fundamental).